IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TAVON SMITH #350-645                    *
        Plaintiff,
   v.                                   *   CIVIL ACTION NO. CCB-11-1844

BOBBY P. SHEARIN                        *
JOHN WHITE[1]
SUSAN JOHNSON                           *
        Defendants

**MEMORANDUM**

**I.    Procedural History**

In this 42 U.S.C. § 1983 prisoner civil rights action filed on July 5, 2011, plaintiff Tavon Smith seeks injunctive relief requiring placement in protective custody status and money damages for injuries allegedly occurring at the hands of fellow prisoners. ECF No. 1. In response to a court order, counsel for defendants provided information on July 22, 2011, that Smith will be single-celled, will shower alone, and will receive recreation alone while serving a disciplinary segregation sentence due to expire April 14, 2013. ECF No. 5. On that basis, the undersigned denied Smith's request for emergency injunctive relief and provided him the opportunity to supplement his complaint. ECF No. 12.

In his supplement, Smith continues to request injunctive relief and money damages and complains that defendants Shearin, White and Johnson failed to prevent assaults at the hands of unknown individuals alleged to have occurred on March 15, 2011, and June 21, 2011, prior to defendants' July 22, 2011 response.[2] ECF No. 15. He later clarified that the assaults allegedly occurred on March 15, 2010, and November 11, 2010. ECF No. 19. These two alleged attacks, as well as Smith's claim that defendant Johnson failed to respond when Smith gave her a "kite" stating he would be "hit," are the sole claims at issue here. Defendants have filed a supplemental

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of defendants' names.

[2] Smith also attempted to include claims regarding additional assaults and attempted assaults alleged to have occurred on March 5, 2011, June 23, 2011, and December 7, 2011. These allegations, contained in ECF Nos. 14, 18, 19 and 27, fall outside the parameters of this case and shall be dismissed without prejudice. Smith may file new actions concerning each of these claims and in doing so should provide information concerning all attempts at administrative exhaustion.

motion for summary judgment addressing these claims (ECF No. 20) which is opposed by Smith.[3] ECF Nos. 24, 27 and 29. A hearing is not needed to resolve the constitutional issues presented. *See* Local Rule 105.6. (D. Md. 2011). For reasons which follow, defendants' supplemental motion for summary judgment shall be granted.

## II. Standard of Review

**Motion for Summary Judgment**

Fed. R. Civ. P. 56(a) provides that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Failure to Protect**

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Smith must establish that the correctional defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987).

---

[3] As defendants filed a timely response, Smith's request for entry of default judgment (ECF No. 23) is denied. His request to compel discovery (ECF No. 25) is denied as it is overly broad and not clearly related to the specific incidents at issue.

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]o survive summary judgment, [plaintiff] must come forward with evidence from which it can be inferred that the defendant-officials…knowingly and unreasonably disregard[ed] an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future." *Farmer*, 511 U.S. at 846.

   III.   Analysis

   **Background**

   Case notes dating from January of 2009 show that Tavon Smith has a history of institutional violations resulting in an increase in security status, imposition of a lengthy stay on disciplinary segregation status, and transfer to Maryland's maximum security prison, NBCI, on November 19, 2009. ECF No. 20, Exhibit 2 at 11-16. At the time he arrived at NBCI, his disciplinary segregation sentence was due to expire on January 3, 2011. *Id.*, Exhibit 2 at 10. A disciplinary review was provided monthly. On April 14, 2010, Smith's status was reviewed and he was informed that he would be removed from disciplinary segregation on December 4, 2010. *Id.*, Exhibit 2 at 8. Continued improvements in behavior merited further reductions in Smith's disciplinary segregation sentence. *Id.*, Exhibit 2 at 6 (Entry dated September 1, 2010).

   On September 28, 2010, Smith was reassigned from disciplinary segregation to administrative segregation/disciplinary segregation status. The notation indicates Smith was "advised that Intel was looking into his situation" and "that a recommendation would be recommended once the information has been received from Admin. Seg." *Id.*, Exhibit 2 at 6 (Entry dated September 28, 2010).[4] One month later, for reasons not clear from the record, he was reassigned back to disciplinary segregation. *Id.*, Exhibit 2 at 6 (Entry dated October 26, 2010). On December 22, 2010, Smith was informed during review that he would remain on disciplinary segregation until May 22, 2011. During this session, Smith gave defendant Johnson

---

[4] Presumably, this investigation resulted from the "kite" that had been confiscated by Lt. Thomas after the March 15, 2010 incident.

a fingerprint card and letters to be copied, including a letter addressed to fellow prisoner Eddie Murphy. Johnson provided the letter to Murphy to prison investigator Lt. Thomas. *Id.*, Exhibit 2 at 5.

During his February 10, 2011 review, Smith told defendant Johnson that he was "having gang related issues…[that] he had made…known to HQ"[5] and others. Smith complained to Johnson that he was in danger and his concerns were not being taken seriously. *Id.*, Exhibit 2 at 5. Smith incurred another infraction, resulting in extension of his disciplinary segregation status until July 7, 2011. *Id.*, Exhibit 2 at 5 (Entry dated February 16, 2011). Although unclear from the record, it appears Smith incurred additional infractions. On May 11, 2011, he was advised his disciplinary segregation sentence would continue until December 1, 2012. *Id.*, Exhibit 2 at 4. An additional infraction resulted in his removal from school and extension of disciplinary segregation until April 14, 2013.[6] *Id.*, Exhibit 2 at 3 (Entries of July 21, 2011 and August 5, 2011).

Smith's claims shall be examined in light of this background.

**March 15, 2010 Incident**

On this date, Smith was housed on disciplinary segregation. ECF No. 20, Exhibit 2 at 8-9. Smith was in the recreation "cage" with fellow prisoner Anthony Weedon. An altercation ensued. There is no evidence suggesting either prisoner received more than minor injury, nor any indication of animosity between the two men prior to this incident. Smith was found not guilty of an institutional infraction as a result of the incident. *Id.*, Exhibit 2 at 8; see also ECF No. 27, Exhibit 1. Although each man was added to the other's "enemies list," the two later resolved their differences and their requests to retract their names from the enemies list was granted. ECF No. 6, Exhibit 6 at 2 and ECF No. 5, Exhibit 4 at 2-3.

**"Kite" Incident**

---

[5] Smith's letter to Department of Public Safety and Correctional Services (DPSCS) headquarters triggered DPSCS Case Manager Charvette Henson to notify defendant Shearin that Smith might have received a threat. On January 21, 2011, Smith was informed by Henson that Shearin had reviewed information concerning the threat and determined that Smith could remain on disciplinary segregation. Henson also informed Smith that protective custody housing throughout the prison system was full and the DPSCS maintained a waiting list. ECF No. 27, Exhibits 6 and 7.

[6] Smith's disciplinary segregation sentence exceeds his mandatory release date of January 13, 2013. *Id.*, Exhibit 2 at 1, Entry of October 27, 2011. While he has been found not guilty of several infractions, ECF No. 27, Exhibit 4, other recent infractions include staff assault and possession of multiple weapons. ECF No. 20, Entry of November 29, 2011.

In his complaint, Smith alleged that subsequent to the March 15, 2010 incident, Lt. Thomas informed Smith that he had received a "kite" indicating Smith was to be "hit." Smith claims as a result Thomas placed him on administrative segregation on September 24, 2010, claiming Smith was in danger. Smith complains that defendant White later removed him from administrative segregation and placed him back on disciplinary segregation. Defendants do not provide information as to why Smith was removed from administrative segregation and returned to disciplinary segregation in October of 2010. The December 22, 2010 segregation review summary notes that he would remain on disciplinary segregation until May 22, 2011. The court infers that Smith incurred additional infractions that led to his removal from administrative segregation and his return to disciplinary segregation. After returning to disciplinary segregation, Smith was involved in an altercation with another prisoner on November 11, 2010.

**November 11, 2010 Incident**

On November 11, 2010, Smith was charged with assault on another prisoner under Rule 102. At his November 16, 2010, disciplinary hearing, he was found not guilty of the charge. ECF No. 27, Exhibit 4. Smith states – and defendants do not dispute – that the other prisoner was the aggressor. *Id.* at 3. Neither Smith nor defendants explain the circumstances under which a disciplinary segregation prisoner came into contact with a fellow prisoner, nor do the parties provide details of the altercation or any indication that Smith was physically injured as a result. At best, it appears the November 11, 2010 incident is the "harm" that came about on the heels of Smith's removal from administrative segregation. While the incident is regrettable, there is no showing that defendants were deliberately indifferent to a known risk of harm culminating in this incident. The "kite" appears to have been investigated by prison Intel. While Smith expressed concern that prison gangs might wish him harm, he does not indicate that the individuals involved in the March 15 or November 11, 2010 altercations were gang affiliates or otherwise considered his enemies. Subsequent to the filing of this lawsuit, defendants have taken steps to further isolate Smith from other prisoners, and these steps will be followed until Smith is released from incarceration in January of 2013.

Nothing more is constitutionally required.  Defendants are entitled to summary judgment. A separate order granting same shall be entered in accordance with this memorandum.

Date:  March 8, 2012                                                _____/s/_____
                                                                                Catherine C. Blake
                                                                                United States District Judge